People v Cumbe (2024 NY Slip Op 50524(U))

[*1]

People v Cumbe

2024 NY Slip Op 50524(U)

Decided on April 19, 2024

Criminal Court Of The City Of New York, Kings County

Mimes, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 19, 2024
Criminal Court of the City of New York, Kings County

The People of the State of New York,

against
Wilson Cumbe, Defendant.

Docket No. CR-036747-23KN

Defendant's Attorney: Jennifer Kovacs, The Legal Aid Society, 111 Livingston Street, NY 11201
People: Jonathan Batista, Kings County District Attorney's Office, 350 Jay Street, NY 11201

Sherveal Mimes, J.

In this matter, defendant moves by notice of motion to dismiss the accusatory instrument due to the People's failure to file a valid Certificate of Compliance ("COC") within the speedy trial timeframe (CPL 30.30 [1] [b]). Defense counsel filed the instant motion ("Defense Motion") on February 5, 2024. The People interposed written opposition ("People's Response") on February 28, 2024. On March 11, 2024, defense counsel filed a reply ("Defense Reply"). 
The court arraigned defendant on Vehicle and Traffic Law § § 1192 (1) Driving While Ability Impaired, 1192 (2) Driving While Intoxicated per se, and 1192 (3) Driving While Intoxicated, on October 7, 2023. The court adjourned the matter to December 7, 2023, for the People to file their COC. On the next court date (December 7, 2023), the People were not ready, and the court adjourned the matter to January 22, 2024. On December 26, 2023, the People served and filed their COC and Statement of Readiness ("SOR"). Defense counsel sent the People a letter highlighting missing discovery on January 18, 2024 (Defense Motion, p. 2). On the next court date (January 22, 2024), the court issued a motion schedule. 
After careful review of the defendant's motion, the People's response, defense counsel's reply, and all relevant legal authority, the motion to dismiss is granted.
Defense counsel contends that the COC is invalid and SOR illusory, because the People failed to disclose discoverable material within the speedy trial timeframe. Defense counsel maintains that the following items were listed in the COC but not disclosed to defense: (1) page 11 of the complaint report worksheet was cut off and needs to be re-scanned; (2) scratch arrest checklist; (3) scratch online booking system arrest worksheet; (4) all HIDTA photographs (defense argues that they need the other side of the individual's face and that there is at least one color photograph missing from the HIDTA pictures); (5) pages 29, 30, 32, and 34 of the scratch arrest worksheet are cut off; and (6) color prisoner movement slip (Defense Motion, p. 5).
Defense counsel also argues that there are other discoverable materials, not included in the COC and that were not disclosed (Defense Motion, p. 6-9). Those materials are as follows: [*2](1) PBT calibration reports for serial number 254658 (defense argues that the one provided was expired as of May 20, 2023); (2) calibration reports for serial 90-001960 for six months before October 6, 2023 (defense argues that defense only has tests for August 20, 2023); (3) .2, .3, and .4 gas chromatogram reports for Lot 23270; (4) simulator solution material for the period prior to August 2023 for Lot 23270 (defense argues defense was provided the wrong solution lot); (5) audit trail logs for the three IDTU videos from Officer Bell and the four body-worn camera ("BWC") provided for the responding officers; (6) color photographs for the Modelo can and prisoner movement slip (defense argues that only black and white photographs were provided); (7) PETS inventory slip for other property vouchered (defense argues that defense only has PETS for the car, but defense wants to know if there are any for other property seized); (8) health card for Officer Schlitt who administered the PBT on scene; (9) photographs taken by Officer Byfield as evidenced by BWC (defense counsel argues that a fellow officer administered the PBT and stated "here is the serial number, just take a picture of this I will double check for you"); (10) RALL; (11) VSA Superform; (12) Underlying CCRB report for one case for Officer Woodburn as well as recent CCRB materials (defense argues that the ones provided were from March 3, 2020); (13) updated CCRB for Officer Byfield (defense argues that the ones provided are from July 14, 2024); (14) Giglio disclosures from Officer Iakovlev, including CCRB disclosures; (15) Giglio disclosure sheet for Officer Schlitt (who defense argues administered the PBT on scene), including the CCRB report; (16) Letter of instruction provided to Officer Woodburn for his failure to activate his BWC during a fatality and the IAB logs that this particular log was grouped with; (17) five attachments referenced in the underlying disclosure for Officer Woodburn; (18) unredacted CCRB report for Officer Bell and the full CCRB investigatory file for the materials that are redacted (defense contends that five charges and four cases exist); and (19) spinoff and ICMT case logs for Officer Bell (defense listed 22 IAB Logs here) (Defense Motion, p. 6-9).
In response, the People maintain that the COC and SOR are valid, because they filed same in good faith, after exercising due diligence (People's Response, p. 5-6). With respect to materials that have been disclosed but are not complete, the People argue that defense has failed to show how defendant was prejudiced by this (People's Response, p. 9). The People argue that the cut off portions for the re-scanned material either has no value such as the edge of a blank area of a page, or the information is restated on the next pages (People's Response, p. 9). The People argue that two HIDTA photographs have already been disclosed (People's Response, p. 9). The People further argue that the color copies of all the photographs defendant request would be superfluous and should not vitiate the COC (Peoples' Response, p. 9). With respect to the photograph of the PBT, the People contend that they attempted to confirm its existence but that no information has been obtained as to whether it was ever taken or has since been deleted (People's Response, p. 9). However, the People explain that the serial number for the PBT is visible on BWC and Officer Schlitt, on BWC, clearly states the serial number (People's Response, p. 9). The People argue that they have disclosed the scratch online booking sheet, which the People assert was provided in its entirety on pages 8 and 9 of the arrest packets (People's Response, p. 10). The People also argue that they have already disclosed all simulator solution gas chromatography reports (People's Response, p. 10). 
The People recount their efforts of due diligence with respect to the remaining items in contention. The People argue that on November 2, 2023, they contacted the discovery liaison requesting activity logs for officers on scene and the IDTU operator (People's Response, p. 2). [*3]On November 3, 2023, the People continue that they requested all footage from the Intoxicated Driver Testing Unit (People's Response, p. 2). The People affirm that they also requested Giglio materials for all officers that could be potential prosecution witnesses who did not have up-to-date impeachment information (People's Response, p. 2). 
Additionally, the People explain that certain items the defense has requested do not exist (People's Response, p. 6). The People claim there is no VSA Superform in this case, because the NYPD was unable to identify the victim at the time of the arrest and NYPD only creates this material when the case involves an identifiable victim (People's Response, p. 7). The People argue that a "RALL" is not typically generated and that the defense may instead be referring to a DALL report (People's Response, p. 7). In any event, the People argue that there are only certain instances that a DALL is created, and this matter did not trigger the creation of such report (People's Response, p. 7). With respect to the health card for Officer Schlitt, the People argue that a PBT is not a scientific or physical test that requires advanced skill or knowledge and any individual can own and operate one (People's Response, p. 7). Thus, the People argue that Officer Schlitt was likely never issued a health card (People's Response, p. 8). With respect to the PETS Inventory SLIPS, the People state that they contacted the precinct of arrest to determine whether there were outstanding vouchers related to the case and no additional vouchers were provided (People's Response, p. 8). 
Regarding the calibration reports for the intoxilyzer, the People argue that those reports are typically only generated biannually (People's Response, p. 8). The People continue that they provided calibration reports from August 18, 2023, and that the prior report in their possession is from February 15, 2023 (People's Response, p. 8). Thus, the People argue that what defense is seeking does not exist. The People argue that they disclosed all the PBT calibration records in their possession (People's Response, p. 8). The People contend that though the PBT records disclosed are from July 27, 2022, PBT calibration is infrequently performed (People's Response, p. 8). The People further argue that the ethanol used to test the PBT has expired, but that nothing in the report indicates that the PBT was expired (People's Response, p. 8). The People argue that there is no scratch arrest checklist, but they argue that that they did disclose the arrest checklist (People's Response, p. 9). 
The People continue that they disclosed the BWC audit trail logs that were created by the recording officer for other uses, such as categories, tags, or any other information under CPL 245.20 (1) (e) (People's Response, p. 10). However, the People maintain that the remaining audit trail information is electronically stored data generated by a third-party contractor and contains no factual assertions underlying the charged crimes and consequently, not related to the subject matter of this case (People's Response, p. 10-11). 
Regarding out-of-date CCRB letters, the People argue that on the bottom of the letter it indicates that the print dates may vary but the allegation history provided is up to date through the date of the last Giglio material search (People's Response, p. 16; People's Response, Exh. 11). The People also argue that they are only required to disclose impeachment material for their potential testifying witnesses (People's Response, p. 16). The People further contend that they are not required to disclose attachments to IAB logs (People's Response, p. 21). The People continue that these IAB logs would not be admissible at trial and that defense does not show that these attachments would be reasonably likely to be material (People's Response, p. 21). The People argue that they have disclosed multiple letters and underlying documents for the potential witnesses in this case (People's Response, p. 21). The People assert that attachments to IAB logs [*4]will often, but not always, include audio and video files, and reviewing and redacting them would require untold hours of work (People's Response, p. 27). The People argue that they have disclosed IAB logs related to each of the misconduct allegations which detail the allegations and investigative steps taken by NYPD in resolving those allegations (People's Response, p. 22). The People argue that misconduct records in law enforcement personnel files do not relate to the subject matter of the case and are therefore not subject to automatic disclosure (People's Response, p. 17). 
In reply, defense counsel maintains that the People have not disclosed a fully scanned copy of page 11 and the first page of the complaint report worksheet (Defense's Reply, p. 4). Defense argues that it is not for the People to decide what is valuable discovery (Defense's Reply, p. 4). Defense further argues that the People's failure to disclose this material demonstrates bad faith and is not reasonable under the circumstances (Defense's Reply, p. 4). With respect to the color photographs, defense counsel contends that these photographs were taken in color, and, therefore, defense is entitled to receive them in color (Defense's Reply, p. 6). Defense also points out that the People do not list any efforts that they took to obtain these photographs in color upon learning that they were missing (Defense's Reply, p. 6). 
With respect to the photographs taken on scene, defense counsel argues that the People do not provide any details regarding this request (Defense's Reply, p. 6). Defense counsel contends that in a DWI case where the basis of the arrest was the result of a PBT machine that there is so little information about the results of such a critical test (Defense's reply, p. 6). Defense counsel argues that if the photograph has been lost there is no way to know what exactly is on the photograph (Defense's Reply, p. 6). Defense argues that this photograph, taken on scene by the arresting officer during defendant's arrest, is certainly discoverable (Defense's Reply, p. 6). Defense counsel contends that a cursory review of the BWC would have alerted the People that this photograph exists, and it was incumbent on the People to request this photograph prior to filing their COC (Defense's Reply, p. 7). Further, defense counsel argues that the People did not offer proof that they attempted to ascertain this material prior to filing their COC (Defense's Reply, p. 7). 
Regarding the PBT calibration report, defense counsel argues that by statutory mandate, PBT machines must be calibrated every six months to ensure their accuracy (Defense's Reply, p. 8). Defense counsel posits that where a PBT is the basis for an arrest, and there is no photographic reading or reliable calibration, there was no way to show that the machine was in good working order (Defense's Reply, p. 8). Defense further argues that the People failed to provide the calibration report and failed to provide detailed information about the steps they took to obtain this from the NYPD (Defense's Reply, p. 8). Defense counsel further contends that defense possesses more recent PBT calibration reports from defense counsel's other cases (Defense's Reply, p. 7). This, defense counsel continues, casts doubt on the People's position that the last time the machine was calibrated was July 2022 (Defense's Reply, p. 8).
Finally, defense counsel argues that the People disclosed a supplemental COC on March 11, 2024, two weeks after the People filed their response, with all gas chromatograms (Defense's Reply, p. 8). Defense counsel argues that in the supplemental COC the People's explanation for the belated disclosure was that the materials did not exist yet (Defense's Reply, p. 8). However, defense counsel contends that a cursory review of the records demonstrates that the calibration dates listed are from 2020 to 2023 (Defense's Reply, p. 8). Defense counsel argues that these materials were therefore in existence long before they were disclosed and should have been [*5]provided with the original COC (Defense's Reply, p. 8). Defense counsel further argues that NYPD contracts with Guth Laboratories to test the simulator solution (Defense's Reply, p. 9). Defense continues that for these machines to be deemed in good working order they must be tested (Defense's Reply, p. 9). Defense counsel further contends that gas chromatography testing produces documentation including data regarding the value of ethyl alcohol in the simulator solution, generally presented on graphs called chromatograms (Defense's Reply, p. 9). Defense counsel argues that only as of March 11, 2024, when defense counsel received the reports, was defense counsel able to verify that the machine was in proper working order and that the proper value of ethyl alcohol existed in the simulator solution (Defense's Reply, p. 9).
The statutory framework of CPL 245.10 "abolishes the prior mechanism for obtaining discovery through serving a demand upon the People and instead requires the People provide the discovery listed in CPL 245.20 'automatically' within the deadlines established" (People ex rel. Ferro v. Brann, 197 AD3d 787, 787-88 [2d Dept 2021] quoting People v Mashiyach, 70 Misc 3d 456, 461 [Crim Ct, Kings County 2020]). CPL 245.20 provides, in pertinent part, that the People shall disclose "all items and information that relate to the subject matter of the case and ... are in [their] possession, custody or control." It is further statutorily mandated that items and information in the possession of any local police or law enforcement agency is deemed to be in the possession of the People, and the People must actually produce any such discovery to defendant (People ex rel. Ferro v. Brann, 197 AD3d at 787-88 [2d Dept 2021]; CPL 245.20 [2]).
CPL 245.20 (7) presumption of openness states that "[t]here shall be a presumption in favor of disclosure when interpreting sections 245.10 and 245.25, and subdivision one of section 245.20, of this article." Thus, when reading CPL 245.20 (1) it should be done so in conjunction with CPL 245.20 (7) (see People v Rahman, 79 Misc 3d 129 [A] [App Term, 2d Dept, 11th & 13th Jud Dists 2023] [holding that the People were required to disclose FDNY/EMS records in light of the instruction to interpret 245.20 [1] in favor of disclosure]).
After providing the discovery required, the People must file a COC that states they exercised due diligence, made reasonable inquiries to ascertain the existence of material and information subject to discovery, and disclosed same to defendant (CPL 245.50 [1]). The People must file a supplemental certificate if they provide additional discovery after filing the initial COC (CPL 245.50 [1]). In the supplemental certificate, the People must set forth the additional material and information that is being provided to the defense and detail the basis for the delay (CPL 245.50 [1] and [1-a]). It is statutorily prescribed that the People shall not suffer an adverse consequence from filing a COC in good faith and reasonable under the circumstances (CPL 245.50 [1]). Stated another way, the filing of a supplemental COC should not impact the validity of the People's original certificate, if such certificate was filed in good faith after the People have exercised due diligence in accordance with Section 245.20; or if the additional discovery did not exist at the time of the filing of the original COC (CPL 245.50 [1-a]).
The defendant has the initial burden of identifying a specific defect with the People's COC (People v Brown, 74 Misc 3d 1227 [A] [City Ct, Albany County 2022]). If discovery is contested, the burden shifts to the People to demonstrate that they operated in good faith, exercised due diligence, and expeditiously provided any missing discovery to defendant (People v. Pondexter, 76 Misc 3d 349, 353 [Crim Ct, New York County 2022]).
Notwithstanding the above statutory provisions, a "bare-bones assertion" as to the People's initial discovery obligation, "does not provide the Court with the necessary factual basis to make a finding as to due diligence" (People v Pondexter, 76 Misc 3d 349, 353 [Crim Ct, NY [*6]County 2022]). Rather, the People must sufficiently detail their efforts to comply with the statute and further, they must explain how the error occurred, when it was detected, and when it was remedied (CPL 245.50 [1-a]; People v Pondexter, 76 Misc 3d at 353 [Crim Ct, New York County 2022] citing People v. Pierna, 74 Misc 3d 1072 [Crim Ct, Bronx County 2022]). 
The Court of Appeals opined that the statute does not require a perfect prosecutor, while also making clear that good faith cannot cure a lack of due diligence (People v Bay, NY Slip Op 06407 *6 [2023]). The Bay court lays out factors the court may consider in evaluating the People's due diligence: "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (id.).
As an initial matter, the court finds that the People sufficiently explained the absence of the following materials from their original COC: VSA Superform, RALL, Health Card for Officer Schlitt, PETS Inventory Slip, "out-of-date" CCRBs, the scratch arrest checklist, and the scratch online booking system arrest worksheet. Thus, the court finds that the People have not violated their discovery obligations with respect to those materials. 
Audit Trails
Courts have found that audit trail logs are discoverable under CPL 245.20 (1) (e), (k) and (u) (i) (B) (see People v Ballard, 2023 NY Slip Op 23392 [Crim Ct, Queens County 2023]; People v Champion, NYS3d, 2023 Slip Op 23312 [Crim Ct, New York County 2023]; People v Torres, 78 Misc 3d 1206[A] [Crim Ct, Queens County 2023]). In People v Champion, NYS3d, 2023 Slip Op 23312 (Crim Ct, New York County 2023), the court explained that audit trail logs contain technical information about the body-worn camera itself, including when it was used, volume changes, any buffering that may have occurred, when the video was uploaded and deleted, the battery life of the camera, as well as information about which officers viewed recordings and when recordings were sent to the prosecutor's office. Thus, it is understood that body-worn camera audit trail logs are a component of any given body-worn camera file. 
Section (1) (e) requires disclosure of all statements, written or recorded or summarized in any writing or recording, made by persons who have evidence or information relevant to any offense charged or to any potential defense. Section (1) (u) (i) (B) mandates the disclosure of all electronically created or stored information that is seized or obtained by or on behalf of law enforcement from sources other than the defendant which relate to the subject matter of the case. Section (1) (k) requires the People to disclose all evidence of information that may impeach the credibility of the testifying prosecution witness.
Courts have arrived at different conclusions when applying the above statutory provisions to cases in which the People have failed to turn over testifying officers' body-worn camera audit trail logs. In People v Larkin, 72 Misc 3d 663 (Sup Ct, Kings County 2021), the court found that audit trail logs offer no additional information regarding the subject matter of a criminal case, which "militates against mandating the automatic disclosure" of such logs. The court explained that the audit trails of body camera footage constitute system metadata, which reflect automatically generated information about the creation or revision of BWC footage, or the date and time of its creation or modification (Larkin, 72 Misc 3d 663). The Larkin court ultimately concluded that audit trail logs are not automatically discoverable (id.; see also [*7]Williams, 73 Misc 3d 1091 [Sup Ct, Kings County 2021]). Instead, the court held that the People's obligation to disclose audit trail logs may be triggered upon a particularized showing that the audit trail is likely to contain information that is relevant to the crimes charged which cannot be ascertained from the footage itself (id.). 
By contrast, in People v Ballard, 2023 NY Slip Op 23392 [Crim Ct, Queens County 2023], the court opined that an officer's audit trail comments and categorizations constitute a form of police writing, which is discoverable under CPL 245.20 (1) (e). The court continued that any such notations are directly related to a criminal case. Additionally, the Ballard court explained that a testifying officer's audit trail log may serve as an impeachable tool against such officer, which expands the usefulness of audit trail logs to impeachment evidence. The court then reasoned that impeachment evidence is not limited to matters that relate to the subject matter of a case (People v Ballard, 2023 NY Slip Op 23392 [Crim Ct, Queens County 2023] citing People v Hamizane, 80 Misc 3d 7 [App Term, 2d Dept, 9th & 10th Jud Dists 2023] [holding CPL 245.20 [1] [k] encompasses all evidence and information which tends to impeach the credibility of a testifying prosecution witness and therefore impeachment evidence and information is not limited to that which is related to the subject matter of a criminal case]). 
The Ballard court also discussed the presumption of openness when interpreting the discovery rules under CPL 245.20. The court also noted that the People, in response to the defense counsel's motion in that case, conceded that there are circumstances in which an audit trail log could become discoverable. The Ballard court also concurred with the decisions of multiple courts at nisi prius holding that the People's filter and opinions concerning the usefulness, or credibility, of evidence should have no import on an Article 245 discovery analysis (Ballard, 2023 NY Slip Op 23392 *7 [Crim Ct, Queens County 2023] citing People v Payne, 79 Misc 3d 827, 831 [Crim Ct, Bronx County 2023]; People v Goggins, 76 Misc 3d 898. 901 [Crim Ct, Bronx County 2022; People v Cooper, 71 Misc 3d 559, 566 [Erie County Ct 2021]). In the end, the Ballard court opined that the burden is not on the defense to make a showing as to relevance of an audit trail log but rather, the People are statutorily obligated to adhere to "a free flow of information" within contemplation of the statute and thus, disclose all known material that is subject to discovery, including the audit trail logs from the body-worn cameras of testifying officers (Ballard, *8; see also CPL 245.55 [1]).
In the instant matter, the court finds that People are required to disclose the officers' body-worn camera audit trail logs. Body-worn camera audit trail logs contain information that is distinct from metadata and body-worn camera footage. It stands to reason that the audit trail logs may reveal information that will aid in the defendant's defense and further, the logs may contain information that could be used to impeach testifying officers. Moreover, the presumption in favor of disclosure and free flow of information mandate militates in favor of the People disclosing, rather than withholding and/or filtering information, based on their own assessment of its viability. The People do not establish due diligence here.
Police Misconduct Records
Under CPL 245.20 (1) (k) (iv), the People are required to disclose "[a]ll evidence and information, including that which is known to police or other law enforcement agencies acting on the government's behalf in the case, that tends to [ . . . ] impeach the credibility of a testifying prosecution witness [ . . . ]." The Appellate Term held that "[ . . . ] with respect to every listed [*8]potential police witness, it was the People's obligation to disclose whether or not disciplinary records exist, and to provide the defense with copies of existing records" (People v Hamizane, NY Slip Op 23233 [App Term, 2nd Dept 2023]). The Hamzine court emphasized that the People must disclose all disciplinary records that tend to impeach the credibility of a testifying prosecution witness and those disciplinary records clearly go to the weight of the credibility of the witness (id; see also People v Rodriguez, 77 Misc 3d 23 [App Term, 1st Dept 2022] citing Matter of Jayson C, 200 AD3d 447, 449 [App Term, 1st Dept 2021] [the court opined that the People's COC was invalid upon finding that they did not disclose "underlying impeachment materials pursuant to CPL 245.20 (1) (k)" citing Matter of Jayson C, 200 AD3d 447, 449 [App Term, 1st Dept 2021]; People v Spaulding, 75 Misc 3d 1219 [A] [Crim Ct Bronx County 2022]).
In People v Weisman, 2023 NY Slip Op 51248 (U) (App Term, 9th & 10th Jud Dists October 26, 2023), the court held that the IAB files were not related to the subject matter of the case, thus the People did not violate their discovery obligations in failing to disclose them. However, Weisman is dicta and therefore this court is not bound to follow that ruling (see People v Sylvestre, 2023 NY Slip Op 23361 at *4-5 (Crim Ct, Kings County 2023) [FN1]
. 
The People's failure to disclose underlying disciplinary records for IAB logs for any officer who is not a testifying prosecution witness is not averse to the People's duties (see People v Edwards, 77 Misc 3d 740, 744 [Crim Ct, Bronx County 2022]). The People listed Officers Byfield, Woodburn, and Bell as potential testifying witnesses in their Notice/Disclosure Form. Therefore, the People's failure to disclose any Giglio with respect to Officer Iakolev and Schlitt (not listed as potential testifying officers on the Notice/Disclosure Form) does not contravene their discovery duties. However, the People's failure to disclose underlying IAB disciplinary records for Officer Bell and the IAB logs for Officer Woodburn do violate the People's duties under article 245.
Additionally, CCRB and civil lawsuits are not in the People's constructive possession because they are not law enforcement agencies (see People v Carter, 76 Misc 3d 1206 [A], 2022 NY Slip Op 50837 [U], *6 [Crim Ct, Bronx County 2022]). The People do not need to ascertain these materials to comply with their initial discovery obligations if they would be required to ascertain them via subpoena duces tecum (CPL 245.20 [2]). If these materials are in their possession, however, the People are required to disclose them (CPL 245.20 [7] presumption of openness). As such, the court is not persuaded that the People failed in their obligations here.
IAB Attachments
The People's position that IAB log attachments will often include audio and video files, which could take untold hours of work to review and redact such attachments is illuminating. The People go on to concede that not all attachments are of such a nature. The People are providing hypotheticals about attachments generally. What is unknown here, is whether the attachments in the instant matter require such arduous work from the People. Further, the legislature provided the People with paths to rectify issues of voluminous discovery, if that is the [*9]case here. IAB attachments would fall under "all evidence and information that, including that which is known to police or other law enforcement agencies acting on the government's behalf [ . . . ]" under CPL 245.20 (1) (k). However, the court does not have enough information to determine whether these attachments are in the People's possession. Thus, without more, the court finds that the People adequately complied with their discovery obligations here.
Redacted CCRB
It is undisputed that the People disclosed redacted CCRB materials to defense counsel. CPL 245.20 (6) states that "[e]ither party may redact social security numbers and tax numbers from disclosures under this article." Further CPL 245.70 (1) states that "upon showing of good cause by either party, the court may at any time order that discovery or inspection of any kind of material or information under this article be denied, restricted, conditioned or deferred, or make such other order as is appropriate [ . . . ]." The statute further elaborates ways the court may use its discretion in making said discovery alternatively available to counsel. That is, the parties must seek guidance from the court to shield discovery, unless the redacted items are social security or tax numbers. In this case, the People turned over redacted CCRB disclosures. The People do not purport that the redacted material are social security or tax numbers. Further, the People do not indicate that these materials were provided to them already redacted. The People do not establish an effort of due diligence to comport with their duties here.
Calibration Reports
CPL 245.20 (1) (s) states that "[i]n any prosecution alleging a violation of vehicle and traffic law [ . . . ] all records of calibration, certification, inspection, repair or maintenance of machines and instruments utilized to perform any scientific tests and experiments, [ . . . ] for the period of six months prior and six months after such test was conducted, including records of gas chromatography [ . . . ]." CPL 245.20 (1) lists various categories of discovery that must be automatically disclosed; however, only in very few subsections did the legislature specifically detail items of discovery that must be disclosed. The court emphasizes that the Intoxilyzer 9000 and Preliminary Breath Test ("PBT") calibration reports are vital to determine whether these instruments were functioning properly when used.
Here, the legislature clearly states that the People must disclose gas chromatography records for the six months prior to and after such scientific test was conducted. The People's argument that the reports for the Intoxilyzer 9000 are typically generated biannually does not provide the court with any information into their due diligence to ascertain the most current material. Additionally, what is "typically" done does not support what may have actually been done here. The People do not detail steps that they took to comply with their discovery obligations under subsection (s). Thus, the court finds that the People failed to demonstrate that they acted with due diligence to ascertain the calibration reports for the Intoxilyzer 9000. 
Similar to the Intoxilyzer calibration, PBT calibration reports are automatically discoverable under subsection (s). It is undisputed that the People disclosed PBT calibration reports from July 27, 2022. The People's explanation that calibration is performed infrequently and that they disclosed what was in their possession does not suffice. The People must expound upon the efforts that they have made to ascertain these reports in order to establish a due diligent [*10]effort. As the People have not, the court finds that the People failed to comply with their duties here.
Photographs
Photographs made by law enforcement are automatically discoverable under CPL 245.20 (1) (i). It is uncontested that the People did not disclose a photograph of the PBT that was taken. The People do not sufficiently explain what steps they took to ascertain this material prior to filing their COC. The People similarly do not explain the efforts they have taken to produce this photograph once the defense alerted them that it was not provided. With respect to the outstanding PBT photograph, the court notes that what may have been read aloud on the body-worn camera may also reflect the contents of the photograph. However, this does not obviate the People from taking steps to ascertain this material. Therefore, the court finds that the People did not exercise due diligence here.
Incomplete Disclosures
It is uncontested that the People failed to disclose Page 11 of the complaint report worksheet; color photographs of the prisoner movement slip; and color HIDTA photograph; photograph of the PBT. Photographs are automatically discoverable under CPL 245.20 (1) (h). The complaint report worksheet, in its entirety, is automatically discoverable under CPL 245. 20 (1) (e). The People do not recount steps to produce these materials prior to filing their COC. Similarly, upon defense counsel notifying the People of these missing materials, the People did not take steps to provide them to defense counsel. Thus, the court finds that the People have failed to exercise due diligence here.
For the foregoing reasons, the court finds that the People failed to disclose discoverable materials and did not act with due diligence. Therefore, the People's COC and SOR are invalid and illusory, respectively. 
On an unclassified misdemeanor where the sentence is greater than three months, as is the case here, the People must be ready for trial within 90 days of the commencement of the criminal action (CPL 30.30 [1] [b]). This case commenced on October 7, 2023, upon the filing of the accusatory instrument. The time from October 7, 2023, to the day the court issued a motion schedule (January 22, 2024) is 107 days.
Accordingly, it is hereby
ORDERED, that the defendant's motion to dismiss pursuant to CPL 30.30 (1) (b) is granted, and it is further
ORDERED, that the Order of Suspension is vacated.
DATED: April 19, 2024
Brooklyn, New York
HON. SHERVEAL MIMES, J.C.C.

Footnotes

Footnote 1: The court is not bound by People v Johnson, 218 AD3d 1347 (4th Dept 2023) or People v McCarty, 2023 NY Slip Op 06173 (3rd Dept 2023) (see People v Graham, 177 Misc 2d 542, 543 [1998]).